NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ROBERT WORTHINGTON, on Behalf of Himself and all Others Similarly Situated,** <br> **Plaintiff,** <br> **v.** <br> **BAYER HEALTHCARE, LLC** <br> **Defendant.** | **Civil Action No.: 11-2793 (ES)** <br> **OPINION** |
| **DINO RIKOS, on Behalf of Himself and all Others Similarly Situated,** <br> **Plaintiff,** <br> **v.** <br> **BAYER HEALTHCARE, LLC** <br> **Defendant.** | **Civil Action No.: 11-3017 (ES)** |
| **TROY YUNCKER, on Behalf of Himself and all Others Similarly Situated,** <br> **Plaintiff,** <br> **v.** <br> **BAYER HEALTHCARE, LLC** <br> **Defendant.** | **Civil Action No.: 11-3299 (ES)** |

**SALAS, DISTRICT JUDGE**

## I. Introduction

Pending before this Court are Bayer Healthcare, LLC's ("Defendant" or "Bayer") three motions to dismiss complaints brought in three separate actions by three different plaintiffs (collectively, "Plaintiffs"). The three complaints were brought by: Robert Worthington ("Worthington"), (D.E. 1 (11-2793), the "Worthington Compl."); Dino Rikos ("Rikos"), (D.E. 1 (11-3017), the "Rikos Compl."); and Troy Yuncker, (D.E. 1 (11-3299), the "Yuncker Compl."). The Court has considered the parties' submissions related to the following motions to dismiss by Bayer, and will decide them without oral argument under Fed. R. Civ. P. 78: Bayer's motion to dismiss the Worthington Complaint, (D.E. 14-1 (11-2793), "Bayer's Worthington Moving Br."); Bayer's motion to dismiss the Rikos Complaint, (D.E. 13-1 (11-3017), "Bayer's Rikos Moving Br."); and Bayer's motion to dismiss the Yuncker Complaint, (D.E. 4-1 (11-3299), "Bayer's Yuncker Moving Br."). For the following reasons, the Court GRANTS all three of Bayer's motions to dismiss on first-filed grounds.

## II. Factual and Procedural Background

Because the critical issue before the Court relates to a previously filed complaint in the Southern District of California on April 22, 2011 by Diana Stanley ("Stanley" or the "California Plaintiff"), the Court begins its statement of the facts with a discussion of that suit, *Stanley v. Bayer Healthcare, LLC*, No. 11-862 (S.D. Cal filed Apr. 22, 2011). In her Complaint ("Stanley Compl.", Ex. A to the Declaration of Lorna A. Dotro, Esq. in support of motion to dismiss), Stanley alleges that, "[t]hrough an extensive and comprehensive nationwide marketing campaign, Bayer claims that [Phillips Colon Health, Probiotics+Fiber and Probiotics Caps] help 'support' consumers' health benefits that other products cannot." (Stanley Compl. ¶ 4 attached as Ex. A to D.E. 15). She also alleges that "Bayer fails to support this advertising message" with

scientific support, (*id.* ¶ 13), and therefore, "Bayer's representations are false, misleading and reasonably likely to deceive the public." (Stanley Compl. ¶ 5). Stanley seeks certification of a class consisting of "[a]ll person who purchased in the United States Phillips Colon Health® supplement, Caps or Probiotics+Fiber." (*Id.* ¶ 56). Stanley alleges violations of the California Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, (Count I); unlawful business acts and practices in violation of California Business and Professions Code § 17200 *et seq.*, (Count II); breach of express warranty, (Count III); and money had and received, money paid, and unjust enrichment, (Count IV). Stanley seeks class certification, damages, restitution, disgorgement, declaratory relief, and injunctive relief. (*Id.* ¶ 90(a)-(g)).

On May 16, 2011, the Worthington Complaint was filed in the District of New Jersey before Judge Salas. It was the first of the three separately-filed suits brought before Judge Salas against Bayer between May 16 and June 8 of 2011. Worthington, an Alabama resident, (Worthington Compl. ¶ 11), alleges, "Bayer began marketing Phillips' Colon Health Probiotic Caps in October 2008 and Phillips' Colon Health Probiotic+Fiber in June 2009." (*Id.* ¶ 3). Worthington continues, "[t]hrough its advertising and labeling, Bayer claims that Phillips' Colon Health provides 'OVERALL DIGESTIVE HEALTH' and 'helps defend against' 'constipation, diarrhea, [and] gas and bloating' because they contain '3 strains of good bacteria.'" (*Id.* ¶ 2). "In truth," Worthington alleges, "the ingredient matrix found in Phillips' Colon Health has never been tested, clinically or otherwise, and Bayer has no basis to make these claims," (*id.* ¶ 4), and therefore, "Bayer's deceptive advertising and marketing campaign is designed to cause and has caused consumers to buy Phillips' Colon Health." (*Id.* ¶ 7). Worthington defines the proposed class as, "[a]ll persons in the United States who purchased Phillips' Colon Health products." (*Id.* ¶ 49). Based on these core allegations, Worthington alleges the following claims: violations

of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.*, (Count I); breach of implied warranty of merchantability, (Count II); and unjust enrichment (Count III). Worthington seeks certification of a nationwide class, injunctive relief, compensatory damages, exemplary damages, restitution, and disgorgement. (Worthington Compl. ¶ 49, 82(A)-(I)).

On May 25, 2011, the Rikos Complaint was filed before Judge Salas. In that Complaint, Rikos, an Illinois citizen, (Rikos Compl. ¶ 11), makes allegations nearly identical to those in the Worthington Complaint with respect to Bayer's marketing of Phillips' Colon Health Probiotic Caps and Phillips' Colon Health Probiotic+Fiber, (*id.* ¶ 3), Bayer's claims that the products will provide overall digestive health, (*id.* ¶ 2), and that Bayer has not supported its claims scientifically. (*Id.* ¶ 4). As a consequence, "Bayer's deceptive advertising and marketing campaign is designed to cause and has caused consumers to buy Phillips' Colon Health." (*Id.* ¶ 7). Rikos defines the proposed class as, "[a]ll persons who purchased Phillips' Colon Health until the date notice is disseminated." (*Id.* ¶ 41). Rikos alleges the following Counts: violations of the NJCFA, (Count I); violations of California's Consumer Legal Remedies Act, (Count II), violations of California Business & Professions Code, (Count III); violations of Illinois' Consumer Fraud Act, (Count IV); breach of implied warranty of merchantability, (Count V); and unjust enrichment, (Count VI). Rikos seeks certification of a nationwide class, certification of a California subclass, damages, restitution, disgorgement, declaratory relief, and injunctive relief. (*Id.* ¶ 41, 97(A)-(H)).

Shortly after the filing of the Worthington and Rikos Complaints, on June 8, 2011, the Yuncker Complaint was also filed before Judge Salas. In that Complaint, Yuncker, an Illinois citizen, (Yuncker Compl. ¶ 11), makes allegations nearly identical to those in the Worthington and Rikos Complaints with respect to Bayer's marketing of Phillips' Colon Health Probiotic

Caps and Phillips' Colon Health Probiotic+Fiber, (*id.* ¶ 3), Bayer's claims that the products will provide overall digestive health, (*id.* ¶ 2), and that Bayer has not supported its claims scientifically. (*Id.* ¶ 4). Yuncker claims, "Bayer's advertising and marketing campaign is designed to cause consumers to buy Phillips' Colon Health as a result of this deceptive message." (*Id.* ¶ 7). Yuncker defines the proposed class as, "[a]ll persons in the United States who purchased Phillips' Colon Health products." (*Id.* ¶ 49). Yuncker alleges the following Counts: violations of the NJCFA, (Count I); breach of the implied warranty of merchantability, (Count II); unjust enrichment, (Count III); and violations of the Illinois Counsel Fraud Act, (Count IV). Yuncker seeks certification of a nationwide class, certification of an Illinois subclass, injunctive relief, compensatory damages, exemplary damages, restitution, and disgorgement. (*Id.* ¶ 93(A)-(I)).

Bayer's primary argument for dismissal is that the earlier-filed Stanley Complaint bars the later-filed Worthington, Rikos, and Yuncker Complaints because Stanley and the Plaintiffs "filed suit complaining of the same conduct by the same defendant, on behalf of the same proposed class of consumers, and seeking the same relief pursuant to the same or analogous causes of action." (Bayer's Worthington Moving Br. at 4).[1] Plaintiffs argue, "[t]he first-filed rule does not apply . . . because neither the parties in the different actions nor the claims are the

[1] For purposes of clarity, the Court's default citation will be to Bayer's Worthington Moving Brief, which, with respect to the first-filed arguments based on the Stanley Complaint, is almost exactly the same as Bayer's moving briefs against Rikos and Yuncker. Where there are differences in the briefs, the Court will note them. Additionally, the Court notes that the Plaintiffs submitted a combined opposition brief and Bayer submitted a combined reply brief in all three cases. The Court appreciates not only the quality of the briefs by all of the parties, but also their concise, consolidated nature.

same," and "as a result, Bayer's motion to dismiss based upon the first-filed rule should be denied.[2] (Plaintiffs' Combined Opp. Brief at 3).

## III. Legal Standard: The First-Filed Rule

The Third Circuit Court of Appeals has adopted the first-filed rule, which states that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Phila.*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). In determining the applicability of the first-filed rule, courts in the Third Circuit examine the chronology of the actions in addition to the overlapping subject matter, issues, claims, and parties. *See Catanese v. Unilever*, 774 F. Supp. 2d 684, 687-89 (D.N.J. 2011); *Abushalieh v. Am. Eagle Express, Inc.*, 716 F. Supp. 2d 361, 365-66 (D.N.J. 2010). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C*, 850 F.2d at 971. The first-filed rule's primary purpose is to "avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977 (citation omitted). "Although exceptions to the rule are rare, it is not a 'rigid or inflexible rule to be mechanically applied' because it is grounded in principles of equity." *Catanese*, 774 F. Supp. 2d at 687 (citing *E.E.O.C.*, 850 F.2d at 976-77 and quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)). Accordingly, the Third Circuit has recognized the following exceptions to the first-filed rule: bad faith, forum shopping, greater development of the second-filed action, and anticipatory suits filed by parties in one forum to preclude imminently filed suits in another forum (*i.e.*, gamesmanship). *See E.E.O.C.*, 850 F.2d at 976; *Catanese*, 774 F. Supp. 2d at 687.

---

[2] Because the Court finds that the first-filed rule applies, the Court does not reach Bayer's additional arguments for dismissal under Rules 12(b)(6) and 9(b). The Court also does not reach Bayer's claim-specific arguments as to why the Plaintiffs' unjust enrichment and implied warranty of merchantability claims should fail.

Where the Court finds that the first-filed rule applies, and that none of the exceptions apply, the first-filed rule "direct[s] courts to transfer, stay or dismiss an action . . . ." *Nature's Benefit, Inc. v. NFI*, No. 06-4836, 2007 WL 2462625, at *3 (D.N.J. Aug. 27, 2007). The Court may only reach one of these results after considering "fundamental fairness," which "dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *E.E.O.C.*, 850 F.2d at 977 (quotation omitted).

## IV. Discussion

### A. The First-Filed Rule

The Court finds that the first-filed rule applies to the Worthington, Rikos, and Yuncker Complaints, because, as compared to the first-filed Stanley Complaint, the Worthington, Rikos, and Yuncker complaints meet the chronology requirement, in addition to having sufficient identities of subject matter, issues, claims, and parties. The Court addresses each of these factors in turn.

#### 1. Chronology

As to chronology, "the Third Circuit has held that the policy reasons underlying the first-filed rule are 'just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.'" *Catanese*, 774 F. Supp. 2d at 688-89 (quoting *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475 (3d Cir. 1942)). Here, the circumstances easily meet the chronology requirement. The Stanley Complaint was filed April 22, 2011, before the May 16, 2011 Worthington Complaint, the May 25, 2011 Rikos Complaint, and the June 8, 2011 Yuncker Complaint.

**2. Subject Matter and Issues**

The Court finds that the Worthington, Rikos, and Yuncker Complaints are overwhelmingly similar to the first-filed Stanley Complaint. "[T]he most important consideration in a first-filed rule analysis is overlapping subject matter." *Catanese*, 774 F. Supp. 2d at 687; *Ivy Dry, Inc. v. Zanfel Labs, Inc.*, No. 08-4942, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) ("[A] plain reading of the Third Circuit's opinion in *E.E.O.C.* strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties." (quoting *E.E.O.C.*, 850 F.2d at 971)). Bayer argues that the Complaints involve "the same conduct by the same Defendant, on behalf of the same proposed class of consumers, and seeking the same relief for the same or analogous causes of action." (Bayer's Worthington Moving Br. at 9). The Court agrees.

All four Complaints—Stanley, Worthington, Rikos, and Yuncker—contain allegations against the same products, Phillips Colon Health Probiotics+Fiber and Phillips Colon Health Probiotic Caps produced by Bayer. (*Compare* Stanley Compl. ¶ 21, *with* Worthington Compl. ¶ 23, Rikos Compl. ¶ 22, *and* Yuncker Compl. ¶ 23). The core allegation in all four Complaints is that, although Bayer claims that the products improve "OVERALL DIGESTIVE HEALTH," the claim is not scientifically supported. (*Compare* Stanley Compl. ¶¶ 5, 27, *with* Worthington Compl. ¶¶ 2, 7, Rikos Compl. ¶¶ 2, 4, *and* Yuncker Compl. ¶¶ 2, 4). The Complaints all cite, as examples of Bayer's alleged false and misleading advertising, the products' labels and the labels' claims of helping to defend against occasional "constipation, diarrhea, and gas and bloating." (*Compare* Stanley Compl. ¶¶ 24-27, *with* Worthington Compl. ¶¶ 20-24, Rikos Compl. ¶¶ 19-23, *and* Yuncker Compl. ¶¶ 20-24). The Complaints all cite the Frequently Asked Questions on Bayer's website, www.phillipsrelief.com, as examples of

Bayer's false claims regarding its Phillips Colon Health products. (*Compare* Stanley Compl. ¶ 28, *with* Worthington Compl. ¶ 27, Rikos Compl. ¶ 26, *and* Yuncker Compl. ¶ 27). Each Complaint alleges that Bayer's false and deceptive message is conveyed in its television commercials. (*Compare* Stanley Compl. ¶ 31, *with* Worthington Compl. ¶ 26 (explicitly referencing "the colon lady" commercial), Rikos Compl. ¶ 25 (same), *and* Yuncker Compl. ¶ 26 (same)).

Similarly, all four Complaints allege that Bayer has no scientific basis for its claims related to the digestive health properties of its Phillips products. (*Compare* Stanley Compl. ¶ 37 ("Despite a complete lack of scientific or clinical data to support its claims, Bayer disregards accurate advertising in the interest of maximizing profits and charging consumers a premium for its health supplement products."), *with* Worthington Compl. ¶ ("There are no studies that provide substantiation, clinical or otherwise, for Phillips' Colon Health's digestive health and immune system claims."), Rikos Compl. ¶ 28 (same), *and* Yuncker Compl. ¶ 29 (same)). Additionally, the Complaints all attack the validity of Bayer's claims in a similar fashion, by alleging the existence of efficacy standards set forth by the Food and Agriculture Organization of the United Nations and the World Health Organization ("FAO/WHO"), (*compare* Stanley Compl. ¶ 49 (citing a 2002 report by a joint working group of the FAO/WHO setting forth an efficacy substantiation standard), *with* Worthington Compl. ¶ 31 (citing the same 2002 working group and the same efficacy standard), Rikos Compl. ¶ 30 (same), *and* Yuncker Compl. ¶ 31 (same)), and then claiming that any studies performed by Bayer fell below those standards. (*Compare* Stanley Compl. ¶ 48 (explaining that "*in vitro* and animal testing form the basis for a majority of the claims of health benefit of products like Bayer's Phillips Colon Health," and noting how such tests fall below the standards set forth by the FAO/WHO), *with* Worthington Compl. ¶ 32 (citing

the insufficiency of *in vitro* data), Rikos Compl. ¶ 30 (same), *and* Yuncker Compl. ¶ 32 (same)). Even more specifically, all four Complaints allege findings that *lactobacillus gasseri*, *bifidobacterium bifidum*, and *bifidobacterium longum*—the three bacterial strains Bayer uses in its Phillips products—do not improve immune health. (*Compare* Stanley Compl. ¶¶ 6, 7, 45, *with* Worthington Compl. ¶¶ 36, 38-40, Rikos Compl. ¶¶ 33-37 *and* Yuncker Compl. ¶¶ 36-39). Accordingly, the Court finds that the first-filed Stanley Complaint bears a striking resemblance to the subject matter and issues in the later-filed Worthington, Rikos, and Yuncker Complaints.

**3. Claims**[3]

Bayer argues that, as compared to the Stanley Complaint, the Complaints of Worthington, Rikos, and Yuncker "seek[] the same relief for the same or analogous causes of action." (Bayer's Worthington Moving Br. at 9). In opposition, Worthington, Rikos, and Yuncker argue, "while there is some overlap among the claims asserted and the relief sought in the different cases, the different cases do assert different claims, based upon different theories." (Plaintiffs' Combined Opp. Br. at 7). Plaintiffs focus on the fact that the Plaintiffs advance claims under different state laws, and that "[a] decision, for example, on the merits of the California plaintiff's California Consumers Legal Remedies Act claim, or whether a certified class should proceed on that claim, is a different question, and would not be binding on the New

[3] At the outset of its discussion of claims, parties, and classes, the Court notes that it is aware of precedent in the non-class context holding that the first-filed rule must be interpreted narrowly, applying only where the proceedings are "truly duplicative." *See Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980) (rejecting application of the first-filed rule where non-class plaintiff's theories would be subject to different legal standards—"general admiralty principles" for a limitation claim, versus the traditional tort principles for a legal malpractice claim—and where different burdens of proof would apply); *Kedia v. Jamal*, No. 06-6054, 2007 WL 1239202, at *3 (D.N.J. Apr. 25, 2007) (rejecting application of the first-filed rule where non-class plaintiff did not meet the "identity of parties" because he was only "indirectly implicated" in the first-filed action). Here, however, in the putative class context, requiring an exact identity among the parties and claims would make it so the first-filed rule would never apply, undercutting its purpose of judicial efficiency. *See Catanese*, 774 F. Supp. 2d at 689 ("[I]n a class action situation such as this, it would be impossible for the claims to overlap exactly where the actions are brought in different states, and the purpose of the rule would be defeated.").

Jersey plaintiffs as to the merits of their New Jersey Consumer Fraud claim or whether a certified class should proceed on that claim." (Plaintiffs' Combined Opp. Br. at 7).

"For the first-to-file rule to apply, the subject matter of the two cases must 'substantially overlap.'" *Crestron Elecs., Inc. v. Lutron Elecs. Co., Inc.*, No. 10-860, 2010 WL 3035223, at *2 (D.N.J. Aug. 3, 2010) (quoting *Siemens Fin. Servs. v. Open Advantage M.R.I. II L.P.*, No. 07-1229, 2008 WL 564707, at *4 (D.N.J. Feb. 29, 2008); *Nature's Benefit*, 2007 WL 2462625, at *3 (D.N.J. Aug. 27, 2007) ("Neither identical parties nor identical issues are needed, only a 'substantial overlap.'" (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)).

The Court finds that the content of the claims and the relief sought substantially overlap in all instances, and in most instances, overlap with precision. All of the counts in all of the Complaints relate to allegations that Bayer's unsupported and unsubstantiated health claims related its Phillips products were false and misleading. (*Compare* Stanley Compl. ¶¶ 5, 27, *with* Worthington Compl. ¶¶ 2, 7, Rikos Compl. ¶¶ 2, 4, *and* Yuncker Compl. ¶¶ 2, 4). For example, Count I in Stanley's Complaint—for violations of the California Consumers Legal Remedies Act—involves allegations that Bayer "[r]epresent[ed] that [the Products have] . . . characteristics, . . . uses [or] benefits . . . which they do not have . . . ." (Stanley Compl. ¶ 64) (alternations in the original). Count II in Stanley's Complaint—for unlawful business acts and practices in violation of California Business and Professions Code Section 17200 *et seq.*—relates to Bayer's "unfair, deceptive, untrue and misleading advertising." (*Id.* ¶ 70). These Counts overlap with Worthington's, Rikos's, and Yuncker's New Jersey Consumer Fraud Act counts, with Rikos's and Yuncker's Illinois Consumer Fraud Act Counts, and with Rikos's California Consumers Legal Remedies Act. Additionally, Stanley's breach of

express warranty and money had and received Counts overlap with the content of Worthington's and Yuncker's Counts for breach of implied warranty of merchantability. Finally, the Counts in Stanley's Complaint overlap with the unjust enrichment Counts in Worthington's and Yuncker's Complaints because those Counts also focus on Bayer's alleged deceptive and misleading statements for which "Bayer unjustly received a benefit at the expense of Plaintiff and the other members of the Class." (*Compare* Stanley Compl., *with* Worthington Compl. ¶ 79, *and* Yuncker ¶ 80).

Because some of the above Counts are brought under different state laws, Plaintiffs argue that the Counts in the Complaints do not sufficiently overlap for purposes of the first-filed rule. (Plaintiff's Combined Opp. Br. at 7). The Court disagrees, and is persuaded by the reasoning in *Catanese* involving a similar situation where a first-filed California case barred a subsequent New Jersey complaint involving "overlapping subject matter." *Catanese*, 774 F. Supp. 2d 687-88. There, the court reasoned:

> [T]he differences in the causes of action and remedies sought are insufficiently material to prevent application of the first-filed rule. The factual allegations underlying these claims are exactly the same. The plaintiffs in both cases accuse Unilever of misleading consumers by labeling ice cream containing alkalized cocoa as "all natural." Where two actions filed in different districts involve the same parties and the same issues, and "differ only as to the remedy sought," the first-filed rule applies. Again, overlapping subject matter is the key; exact identity of claims is not required. Indeed, in a class action situation such as this, it would be impossible for the claims to overlap exactly where the actions are brought in different states, and the purpose of the rule would be defeated. There would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law. The Court finds that the first-filed rule applies . . . ."

*Id.* at 689 (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95-96 (9th Cir. 1982) and *Ivy Dry*, 2009 WL 1851028, at *2 (applying the first-filed rule despite additional claims in second action for common law trade and product disparagement, tortious interference,

defamation and unfair competition). Here, the Stanley Complaint and the Worthington, Rikos, and Yuncker Complaints contain duplicative content with respect to their causes of action. All of the Counts in all of the Complaints are aimed at the success of Bayer's Phillips products as a result of allegedly false and misleading statements. Finding an insubstantial overlap because of the fact that the claims are asserted under different state laws would defeat the judicial efficiency rationale undergirding the first-filed rule. Here, as in *Catanese*, the overlap is clear, and the first-filed rule applies.

**4. Parties and Classes**

The Court also finds a sufficient overlap of the parties and classes proposed by the Stanley Complaint and the Worthington, Rikos, and Yuncker Complaints. Bayer argues, "[a]s in *Catanese*, Plaintiff Worthington's complaint seeks certification of a class duplicative of that sought in an earlier filed complaint. While 'the class representatives are different,' the actions are brought against the same defendant, and 'the proposed classes are identical.'" (Bayer's Worthington Moving Br. at 7 (quoting *Catanese*, 774 F. Supp. 2d at 688)). The Plaintiffs' primary argument in opposition is that the Supreme Court, in *Smith v. Bayer Corp.*, held that "[n]either a proposed class action nor a rejected class action may bind nonparties," and therefore any decision regarding the merits of Stanley's California Complaint would not bind this Court (and, *vice versa*), undercutting one of the rationales of the first-filed rule. (Plaintiffs' Combined Opp. Br. at 4-5 (citing *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011)). Thus, Plaintiffs argue that *Smith* supersedes the *Catanese* holding. (*Id.*). On reply, Bayer argues that *Smith* does not supersede or impact *Catanese* because *Smith* involved claim preclusion under the Anti-Injunction Act's re-litigation exception, and "[t]he first-to-file rule is not based on claim preclusion and its application does not require identical parties." (Bayer's Reply Br. at 3 (citing

*Crestron Elecs., Inc. v. Lutron Elecs. Co.*, No. 10-860, 2010 U.S. Dist. LEXIS 78109, at *5 (D.N.J. Aug. 2, 2010)). Bayer has the better argument.

The Court agrees that *Smith* addresses claim preclusion, not the first-filed rule, which is based primarily on "encourag[ing] sound judicial administration and promot[ing] comity among federal courts of equal rank." *E.E.O.C*, 850 F.2d at 971. The first-filed rule's primary purpose is to "avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977 (citation omitted). Therefore, *Smith*'s holding—that neither a proposed nor rejected class action binds nonparties—does not affect the validity of *Catanese*. Thus, the Court's own careful review of the Stanley, Worthington, Rikos, and Yuncker Complaints, in addition to Plaintiffs' concession that "the California plaintiff might be a member of a class certified in the New Jersey actions, or *vice versa*, if class certification is granted" persuade the Court that the parties share a sufficient identity for purposes of the first-filed rule. Indeed, as the court in Catanese reasoned:

> "[I]n a class action, the classes, and not the class representatives, are compared." Here, the class representatives are different, but the proposed classes are identical (*i.e.*, a nationwide class of purchasers of Breyers' ice cream containing alkalized cocoa). If nationwide classes were certified in both actions, each of the named plaintiffs would be included in the other's class. This Court cannot allow a parallel action to proceed which involves putative absent class members from an earlier-filed class action. Such a situation would cause substantial duplication of effort, and worse, potentially inconsistent rulings. This would frustrate one of the primary purposes of the rule, which is to avoid the embarrassment of conflicting judgments.[4]

[4] The Court notes that the conflicting judgments referenced in *Catanese* and *E.E.O.C.* must be distinguished from the doctrine of claim preclusion. In the context of claim preclusion, one decision has a controlling effect on subsequent decisions involving the same parties and issues. Courts' efforts to avoid conflicting decisions on similar issues is a matter of comity and respect to the Court who first acquired jurisdiction over the issues in dispute. *See E.E.O.C.*, 850 F.2d at 971 ("The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.") (citations omitted).

*Catanese*, 774 F. Supp. 2d at 688 (citing *E.E.O.C.*, 850 F.2d at 977 and quoting *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)). Here, the classes sufficiently overlap because all of the members of all proposed classes would fit into a national class.[5] Additionally, although decisions by this Court on class certification would not bind or preclude the California court's determination of the same issues (and, *vice versa*), this Court wishes to avoid duplicative litigation. *E.E.O.C.*, 850 F.2d at 972 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.").

**B. Exceptions to the First-Filed Rule**

The Third Circuit has recognized the following exceptions to the first-filed rule: bad faith, forum shopping, greater development of the second-filed action, and anticipatory suits filed by plaintiffs in one forum to preclude imminently filed suits in another forum (*i.e.*, gamesmanship). *See E.E.O.C.*, 850 F.2d at 976; *Catanese*, 774 F. Supp. 2d at 687. Plaintiffs argue that the Court should find that the forum shopping exception applies. Specifically, Plaintiffs argue, "[i]t is obvious here that Bayer is attempting to forum shop and plaintiff shop, in an attempt to litigate against the plaintiff asserting the fewest claims, attempting to apply foreign law as the basis for a nationwide class, and to avoid the law that is most favorable to the plaintiff and proposed class." (Plaintiffs' Combined Opp. Br. at 8). The court disagrees, and declines to apply the forum shopping exception to the first-filed rule.

---

[5] The Court recognizes, of course, as the Plaintiffs infer in their opposition, that if class certification is denied in the *Stanley* action in California, or if the Court eventually denied class certification here, then the calculus would change as to whether every member of every proposed class would fit into every other, because some of the proposed classes are state-specific. Therefore, below, the Court, with the principals of fundamental fairness in mind, grants leave to Worthington, Rikos, and Yuncker to re-file in the District of New Jersey with Judge Salas pending the California court's determination of national class certification.

Normally, to make a showing of forum shopping, "a plaintiff must establish that the defendant in the second action [here, Bayer] filed the first action [Stanley] to avoid the second forum (New Jersey)." *Catanese*, 774 F. Supp. 2d 690 (citing *E.E.O.C.*, 850 F.2d at 978). Thus, the forum shopping exception targets a situation where the defendant, who knows it will be sued, acts quickly and files a declaratory judgment action in a favorable forum to knock out any subsequently filed complaints filed in less favorable fora. In such situations, the defendant becomes the architect of the litigation, forcing plaintiffs to follow, instead of lead, the litigation strategy. This does not appear to be the situation here, where Plaintiff Stanley—and not Defendant Bayer—filed the first action in California, choosing the venue, and becoming the architect of the litigation. It cannot be said, therefore, that Bayer *chose* to be sued in California. Additionally, as Bayer argues on reply, Plaintiffs' invocation of "the 'forum shopping' exception is a bit ironic [because] [n]one of the New Jersey Plaintiffs are actually residents of New Jersey." (Bayer's Reply Br. at 6 (citing Worthington Compl. ¶ 11 (Alabama), Rikos Compl. ¶ 11 (Illinois), and Yuncker Compl. ¶ 11 (Illinois))).[6]

**C. Dismissal, Transfer, or Stay**

Where the Court finds that the first-filed rule applies, and that none of the exceptions apply, the first-filed rule "direct[s] courts to transfer, stay or dismiss an action . . . ." *Nature's Benefit*, 2007 WL 2462625, at *3. Additionally, "fundamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *E.E.O.C.*, 850 F.2d at 977.

[6] Plaintiffs advance two other arguments in support of their allegation of Bayer's forum shopping. First, the Plaintiffs argue that, instead of seeking dismissal, Bayer should have filed a motion before the Judicial Panel for Multidistrict Litigation, which would likely select New Jersey because the most cases have been filed in New Jersey, because New Jersey is the site of the occurrence of common facts, and because New Jersey is the most convenient forum. (Plaintiffs' Combined Opp. Br. at 9-11). The Court need not, nor will it, predict what the Panel's determination would be for purposes of applying the first-filed rule. Second, Plaintiffs argue that Bayer seeks to dismiss these Complaints to avoid the strict consumer protection laws in New Jersey. (*Id.* at 8-9). The issue of whether New Jersey's or California's laws would be more protective of the Plaintiffs is also not an issue properly before the court on this motion, and the Court declines to engage in this analysis, especially, where, as here, Stanley, and not Bayer, chose California—not New Jersey—as the first-filed forum.

Here, the Court finds that the first-filed rule does apply, and therefore the Court will dismiss the Worthington, Rikos, and Yuncker Complaints. In the interest of "fundamental fairness," the Court dismisses the Plaintiffs' Complaints with leave to re-file if the Stanley action is dismissed on procedural grounds. *See Catanese*, 774 F. Supp. 2d at 691 ("[T]he Court will transfer the Catanese action to California, but grant the plaintiffs leave to re-file if the Thurston action is dismissed on procedural grounds."). Additionally, as discussed above, if the California court denies nationwide class certification, this Court will entertain Plaintiffs' request to re-file their case.

**V. Conclusion**

For the foregoing reasons, the Court will GRANT Bayer's three motions to dismiss the Complaints of Worthington, Rikos, and Yuncker. An accompanying Order will follow.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**