<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: BAYER PHILLIPS COLON HEALTH PROBIOTIC SALES PRACTICES LITIGATION, | Civil Action No. 11-3017 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This is a putative class action brought by Plaintiffs Troy Yuncker and Dino Rikos on behalf of themselves and all individuals who purchased Bayer's over-the-counter Phillips' Colon Health Probiotic + Fiber product and/or Phillips Colon Health Probiotic Caps (collectively, "Phillips' Colon Health"). Plaintiffs allege, *inter alia*, that Bayer's representations that Phillips' Colon Health "helps defend against" "constipation, diarrhea, [and] gas and bloating" are false and misleading. Currently before the Court is a motion to dismiss Plaintiff's First Consolidated Amended Class Action Complaint (hereinafter referred to as Amended Complaint) pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Bayer. The Court has considered the submissions made in support of and in opposition to Bayer's motion, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Bayer's motion is **granted in part and denied in part.**

**I.     BACKGROUND**[1]

In October 2008 and June 2009, Bayer—which maintains its global headquarters in Morristown, New Jersey—began marketing Phillips' Colon Health Probiotic Caps and Phillips' Colon Health Probiotic + Fiber, respectively. (Am. Compl., ¶ 3). Phillips' Colon Health is sold nationwide in the digestive health sections of drug, grocery and mass retailers. (*Id*., ¶ 7). Prominently placed on its label and throughout its other advertisements, Bayer stated and continues to state that Phillips' Colon Health contains "3 strains of good bacteria to promote overall digestive health," and "help[] defend against occasional: constipation, diarrhea, [and] gas and bloating." (*Id*., ¶ 3). It advertised and continues to advertise that with "scientific evidence" supporting the health benefits of its "probiotic" bacteria, Phillips' Colon Health supports your "digestive system" and "immune system." (Am. Compl., ¶ 3). Bayer conveyed its claims about Phillips' Colon Health on the Phillips' Colon Health's packages and labels, through a variety of media, including the Internet, television advertising, in-store sampling, and point-of-sale displays, and on every Phillips' Colon Health container. (*Id*., ¶ 5). Through this extensive advertising campaign, Bayer has consistently conveyed one message: Phillips' Colon Health, with its probiotic bacteria cultures, is scientifically proven to provide all consumers with digestive and immune system health benefits. (*Id*., ¶ 6).

Notwithstanding Bayer's representations, the Amended Complaint alleges that the ingredient matrix found in Phillips' Colon Health—which includes the following three strains of bacteria: *lactobacillus gasseri, bifidobacterium bifidum,* and *bifidobacterium longum*—does not provide the digestive health and/or immune system benefits that Bayer claims. (Am. Compl., ¶ 4). In support of this position, the Amended Complaint cites to a variety of scientific opinions and studies.

---

[1] The following relevant facts are presumed to be true solely for purposes of this motion.

For example, the Amended Complaint alleges that, in July 2009, the European Food Safety Authority ("EFSA") reviewed the scientific proof in relation to *lactobacillus gasseri*—one of the strains of bacteria contained in Phillips' Colon Health—and concluded that the data available do not demonstrate a cause and effect relationship between consuming the bacteria and improvement of intestinal transit within the normal range. (Am. Compl., ¶ 37). The Amended Complaint also alleges that the EFSA analyzed and reviewed the studies regarding the two other strains in Phillips' Colon Health (*bifidobacterium bifidum* and *bifidobacterium longum)* and concluded, in a 2009 scientific opinion, that a cause and effect relationship has not been established between the consumption of the combination of *bifidobacterium bifidum, bifidobacterium breve, bifidobacterium infantis, bifidobacterium longum,* and decreasing potentially pathogenic intestinal microorganisms in infants and children aged between 0 and 36 months. (Am. Compl., ¶ 38). The Amended Complaint goes on to refer to a 2008 study wherein the EFSA reviewed scientific studies for a claim that consuming a bacterial powder containing *bifidobacterium longum* and two other strains "improve[s] the general immunity by maintaining the microbiological balance" and concluded that the one unpublished *in vitro* study it was provided did not establish the claimed immune system improvement. (*Id.*, ¶ 39). The Amended Complaint also refers to a 2012 scientific opinion published by the EFSA based on a review of purported proof for claims that consumption of the combination of the same three bacteria strains in Phillips Colon Health provides defenses against unhealthy bacteria in the general adult population. There, the EFSA concluded that no cause and effect relationship has been demonstrated for the consumption of the three bacteria in Phillips Colon Health and the maintenance of defenses against pathogenic bacteria. (Am. Compl., ¶ 41).

In light of the foregoing, Plaintiffs bring this action on behalf of themselves and other similarly situated consumers to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Phillips' Colon Health. (Am. Compl., ¶ 8).  Plaintiffs are Troy Yuncker (a citizen of Illinois who purchased the product at a Walgreens in Illinois in May 2011) and Dino Rikos (also a citizen of Illinois, who purchased the product in California and Illinois, respectively, at various times in 2010).  (Am. Compl., ¶¶ 11, 12).  Plaintiffs' Complaint was originally filed in May 2011.  A First Consolidated Amended Class Action Complaint ("Amended Complaint") was filed in March 2014.  Plaintiffs now allege violations of the New Jersey Consumer Fraud Act ("NJCFA"), California's Consumers Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), Illinois Consumer Fraud Act ("ICFA"), breach of implied warranty of merchantability, and unjust enrichment.  This Court's jurisdiction over this action is premised on 28 U.S.C. § 1332(d)(2).  Defendant filed a motion to dismiss the Amended Complaint on April 30, 2014.  This matter was reassigned to the undersigned on October 9, 2014.

## II.    LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429 (3d Cir. 1997).  "A pleading that offers

4

'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.   DISCUSSION[2]

### A.   Consumer Fraud Claims

Defendant Bayer moves to dismiss Plaintiffs' New Jersey Consumer Fraud Act claim on the basis that New Jersey law is inapplicable to consumer fraud claims brought by Illinois residents who purchased Phillips' Colon Health in either Illinois or California.

#### 1.   NJCFA

A federal court sitting in diversity applies the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007). In *P.V. v. Camp Jaycee*, the New Jersey Supreme Court held that the "most substantial relationship" test enunciated in the Restatement (Second) of Conflict of Laws § 188 applies to choice of law disputes arising under both contract and tort law. 197 N.J. 132, 136 (2008). New Jersey's "most significant relationship" test consists of two prongs. First, a

---

[2] To the extent Plaintiffs urge the Court to deny Defendant's motion as barred by Federal Rule of Civil Procedure 12(g)—on the basis that it raises new arguments that could have been raised by Bayer in its prior motion to dismiss—such request is denied.   It is clear that Plaintiffs have added a number of new factual allegations to the Amended Complaint to address, *inter alia*, when and where they purchased the products at issue, in accordance with the Court's March 14, 2014 ruling.  In the interest of fairness, and based on the Court's inherent authority to manage its docket, the Court finds that Defendant should be permitted to raise those challenges that may not have been available to it based on the prior iteration of Plaintiffs' complaint.

court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. *Id.* at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no actual conflict, the analysis ends and the court applies the law of the forum state. *See In re Ford Motor Co.,* 110 F.3d 954, 965 (3d Cir.1997); *Rowe v. Hoffman—La Roche, In*c., 189 N.J. 615, 621 (2007).  However, if a conflict is found, the Court must weigh the factors enumerated in the Restatement section corresponding to the plaintiff's cause of action, in this case, § 148 of the Restatement (Second) of Conflict of Laws since Plaintiffs' NJCFA claim sounds in fraud or misrepresentation.  Section 148 contemplates two scenarios in which a plaintiff asserts a claim for fraud or misrepresentation.  The first scenario involves misrepresentation claims in which both the alleged harm suffered by a plaintiff and the action in reliance of any false representations occur in a single state. The second scenario contemplated under § 148 is where a plaintiff's action in reliance takes place in a state other than where the false representations were made.  Restatement (Second) of Conflict of Laws, § 148 (1971). Where, as here, two or more states are involved, the Restatement provides:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendants' representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

6

> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under the contract which he has been induced to enter by the false representations of the defendant.

*Id.,* § 148(2). This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." *Camp Jaycee,* 197 N.J at 143. Moreover, courts are to evaluate these contacts in light of the principles stated in § 6:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6; *see id.* § 148 cmt. b. "Reduced to their essence, the § 6 principles are: '(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states.' " *Camp Jaycee*, 197 N.J. at 147 (quoting *Erny v. Estate of Merola,* 171 N.J. 86 (2002)).

The parties do not dispute that a conflict exists between the NJCFA and the consumer fraud statutes of Illinois and California. Indeed, "[c]ourts have recognized that significant conflicts exist between the NJCFA and the consumer protection statutes of other states." *In re Mercedes–Benz Tele Aid Contract Litig.,* 257 F.R.D. 46, 63 (D.N.J.2009) (quotation omitted); *see Fink v. Ricoh Corp.,* 365 N.J. Super. 520, 570 (App. Div. 2003) ("A review of the consumer fraud statutes of the various states, and the cases decided thereunder demonstrates the existence of numerous actual

7

conflicts on various issues between provisions of the NJCFA and those of the statutes enacted by other states.").[3]  The parties do, however, dispute which state has the most significant relationship to Plaintiffs' consumer fraud claims.

Plaintiffs argue that New Jersey has the most significant relationship to their consumer fraud claims because the false representations that Bayer allegedly made regarding Phillips' Colon Health, including those false representations contained in its marketing plan for Phillips' Colon Health, emanated from Bayer's headquarters in Morristown, New Jersey.  (Pl. Opp'n Br. at 3). Defendant argues, on the other hand, that consideration of the relevant factors favors application of Illinois and/or California law because the location of Bayer's headquarters and/or the location from which it arguably made the false representations at issue are insufficient to overcome application of the law of the states where Plaintiffs reside and purchased the products in question. (Def. Br. at 7).

---

[3] The NJCFA does not require a showing of reliance, whereas California's consumer protection laws do.  *Compare Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 391 (2007) ("Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover.") *with In re Tobacco II Cases,* 46 Cal.4th 298, 328, 93 Cal.Rptr.3d 559 (Cal. 2009) ("Accordingly, we conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204...."). Moreover, under the NJCFA, treble damages and a jury trial are available. *See* N.J.S. A. § 56:8–19 ("In any action under this section the court shall ... award threefold the damages sustained by any person in interest."); *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 573 (Law Div. 2003) (noting that "parties to a consumer fraud case [in New Jersey are] entitled to a trial by jury").  On the other hand, under Illinois law, there is no provision for treble damages; the ICFA is aimed primarily at compensating for actual damages. *See* 815 Ill. Comp. Stat. Ann. 505/10a(a) ("The court, in its discretion may award actual economic damages or any other relief which the court deems proper ...."). Additionally, as the New Jersey Law Division acknowledged in *Fink*, the Illinois statute does not provide a right to a jury trial. *Fink*, 365 N.J. Super. at 573 (citing *Martin v. Heinold, Commodities, Inc.*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734 (Ill. 1994)).  Therefore, the Court concludes that there is an actual conflict between the NJCFA, the CLRA and the ICFA and will proceed to the second step of the significant relationship analysis.

Of the factors provided in § 148(2), only factor (c) clearly points to New Jersey. There appears to be no dispute that the Bayer made the relevant representations regarding Phillips' Colon Health at its office in Morristown, New Jersey. Factors (a) and (b), the place where the putative class members received Bayer's representations and the place where the consumers acted in reliance upon those representations, both point to the individual states where the product was purchased. Plaintiffs clearly allege that consumers purchased Phillips' Colon Health at retail locations nationwide, not from Bayer itself. Factor (d), the domicile, residence, nationality, place of incorporation, and place of business of the parties, does not point directly to any particular state, as the named Plaintiffs reside in Illinois and California, and Bayer is alleged to have done business in New Jersey.[4] Factors (e) and (f), "the place where a tangible thing which is the subject of the transaction between the parties was situated at the time" and "the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant," point to the state of purchase, as the "transaction" or "contract" between the consumer and Bayer cannot be said to have been consummated until the product was accessed and purchased by the consumer.

In sum, factors (a), (b), (e), (f), and, to a limited extent, factor (d), point to the states of purchase, while only factor (c) points to New Jersey. However, the Court may not simply count up the § 148(2) contacts and apply the law of the jurisdiction with the greater tally. *See David B. Lilly Co., Inc. v. Fisher*, 18 F.3d 1112, 1119 (3d Cir. 1994). Instead, the Court must examine the

---

[4] Moreover, in cases of pecuniary loss, "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant" because "financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." *See* § 148 cmt. i.

9

§ 148(2) contacts in light of the principles stated in § 6, while considering "whether some other state has a greater interest in the determination of the particular issue than the state selected on the basis of the [§ 148(2) ] contacts." Restatement (Second) of Conflict of Laws § 148 cmt. b. "The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue involved." *Id.*

Here, the NJCFA serves both a compensatory and deterrent function. *See Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454, 463 (N.J.1994) ("Although one purpose of the legislation is clearly remedial in that it seeks to compensate a victim's loss, the [NJCFA] also punishes the wrongdoer by awarding a victim treble damages, attorneys' fees, filing fees, and costs."). As Bayer's alleged misrepresentations occurred in New Jersey, application of the NJCFA here would further the legislative goal of deterring wrongful conduct within the state. Furthermore, it has been noted that "[a] number of states, including Maine, Oklahoma, and West Virginia, limit recovery or do not allow for punitive damages in consumer fraud actions," while other states, "such as Connecticut, Delaware, Kentucky, and Oregon, place no limits on the punitive damages available in consumer fraud actions." *Mercedes–Benz*, 257 F.R.D. at 64 n. 7, n. 8. This suggests that if the NJCFA were not applied to certain out-of-state consumers, a company based in New Jersey could potentially defraud those consumers but escape the imposition of punitive damages.

As this Court has previously held, however, to apply the NJCFA to the out-of-state consumers in this case would be to ignore the compensatory interests of Illinois and California. Simply because New Jersey has struck a particular balance between consumer protection and the promotion of business within its borders does not suggest that its interest in deterrence should

displace the policy goals of its fellow states. Those states have instead struck their own legislative balances, awarding compensation based on differing standards of, *inter alia*, intent, causation, reliance, and damages. *See Fink*, 839 A.2d at 974–83 (performing a thorough review of the relevant statutes). Here, the named Plaintiffs are alleged to have purchased Phillips' Colon Health at local retailers in Illinois and California. The named Plaintiffs in this case are not alleged to have had any direct involvement with Bayer in New Jersey; rather, they transacted only with third parties located in other states (Illinois and California). Plaintiffs' claims thus have substantial contacts with the states where the Phillips' Colon Health products were purchased, and application of *those* states' consumer protection laws would further *their* interest in compensating purchasers for harms they may have suffered. New Jersey, by contrast, has no interest in compensating out-of-state consumers and has contacts with this litigation only by way of the location of Bayer's headquarters. The Court thus sees little reason to conclude that New Jersey's deterrent interest with respect to one party should be elevated above its fellow states' compensatory interests with respect to the other parties. Indeed, the "interests of interstate comity" and the "competing interests of the states" counsel against the blanket application of one state's law over the laws of other interested states. Finally, while the other principles provided under § 6 and in *Camp Jaycee*, such as the interests of judicial administration and efficiency, are surely applicable here, they "must yield to strong state interests implicated by the remaining factors." *Fu v. Fu,* 160 N.J. 108, 733 A.2d 1133, 1142 (N.J.1999); *see Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J.1998) ("While it might be desirable for the sake of efficiency to settle upon one state, such as New Jersey, and apply its law in lieu of the other 49 jurisdictions, due process requires individual consideration of the choice of

11

law issues raised by each class members case before certification.").[5] Thus, analyzing the contacts found under § 148 in light the principles of § 6, the Court concludes that the states where the named Plaintiffs purchased Phillips' Colon Health have the most significant relationship to Plaintiffs' consumer fraud claims.[6] *See Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202, 208 -209 (3d Cir. 2013) ("Accepting Huryk's premise that there were actionable omissions by BIC at its headquarters in New Jersey, we conclude that this single contact—factor (c)—does not warrant applying New Jersey law. Nothing else about the relationship between the parties, other than the fortuitous location of BIC's headquarters, took place in the state of New Jersey. Huryk's home state, in which he received and relied on BIC's alleged fraud, has the 'most significant relationship' to his consumer fraud claim."); *see, e.g., Gray v. Bayer,* Civil Action No. 08-4716, 2011 WL 2975768, at * 4-6 (D.N.J. July 21, 2011). Defendant's motion to dismiss Plaintiffs' NJCFA claim (Count One) is therefore **granted**.

### 2. California and Illinois Consumer Protection Statutes

Defendant moves to dismiss Counts Two, Three and Four (which contain consumer fraud claims under California and Illinois law) on the basis that Plaintiffs' "lack of substantiation" theory cannot support a cognizable cause of action under Illinois or California law. In particular,

---

[5] The "interests of the parties" are of no moment here, because while this factor "is of extreme importance in the field of contracts," it "ordinarily plays little or no part in a choice-of-law question in the field of torts." *Fu*, 733 A.2d at 1141.

[6] This Court's conclusion is supported by the authors' commentary to § 148(2): "If any two of the [148(2)] contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." *Maniscalco,* 709 F.3d at 209. Here, for example, Plaintiff Yuncker's receipt of and reliance on Bayer's alleged misrepresentations and the location of the sale of the Phillips' Colon Health product all took place in Illinois, thus suggesting that the § 148(2) factors weigh in favor of applying Illinois law to his claims.

Defendant maintains that Plaintiffs must allege—and ultimately prove—actual falsity in order to sustain a viable claim for violation of the California and Illinois consumer protection statutes.

Count Two alleges violation of the Consumers Legal Remedies Act, California Civil Code § 1750, et. seq. ("CLRA"). Count Three alleges false or deceptive advertising in violation of California Business and Professions Code, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). "In an action for false advertising under the UCL and CLRA, the plaintiff 'bears the burden of proving the defendant's advertising claim is false or misleading.' " *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. April 3, 2012) (quoting *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.,* 107 Cal.App. 4th 1336, 1342 (2003)). In other words, "to successfully allege a claim for false advertising [under California law], Plaintiff has the burden to plead and prove facts that show that the claims that Defendant made in connection with product are false or misleading." *Fraker v. Bayer Corp.*, 2009 WL 5865687, at *8 (E.D. Cal. 2009). "Private individuals may not bring an action demanding substantiation for advertising claims. Instead, pursuant to Cal. Bus. & Prof.Code § 17508, only prosecuting authorities may require an advertiser to substantiate its advertising claims." *Stanley*, 2012 WL 1132920, at *3.

Count Four alleges violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1, et seq. ("ICFA"). "To establish a violation of the [Illinois] CFA's prohibition on deceptive acts or practices, a plaintiff must prove that: (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the act or practice; and (3) the act or practice occurred in the course of conduct involving a trade or commerce." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (citations omitted). Only the first of these requirements is at issue in Defendant's motion.

Although the Court agrees with Defendant that a lack of substantiation theory, without more, will not state a viable claim for violation of the CLRA, the UCL or the ICF, the Court finds that the Amended Complaint alleges sufficient facts from several scientific sources which, if accepted as true, allow the Court to draw the reasonable inference that certain representations made by Bayer—that Phillips' Colon Health contains "3 strains of good bacteria to promote overall digestive health," and "help[] defend against occasional: constipation, diarrhea, [and] gas and bloating"—are false or, at a minimum, misleading. For example, as stated above, the Amended Complaint alleges that, in July 2009, the European Food Safety Authority ("EFSA") reviewed the scientific proof in relation to *lactobacillus gasseri*—one of the strains of bacteria contained in Phillips' Colon Health—and concluded that the data available do not demonstrate a cause and effect relationship between consuming the bacteria and improvement of intestinal transit within the normal range. (Am. Compl., ¶ 37). The Amended Complaint also alleges that the EFSA analyzed and reviewed the studies regarding the two other strains in Phillips' Colon Health (*bifidobacterium bifidum* and *bifidobacterium longum)* and concluded, in a 2009 scientific opinion, that a cause and effect relationship has not been established between the consumption of the combination of *bifidobacterium bifidum, bifidobacterium breve, bifidobacterium infantis, bifidobacterium longum,* and decreasing potentially pathogenic intestinal microorganisms in infants and children aged between 0 and 36 months. (Am. Compl., ¶ 38). The Amended Complaint goes on to refer to a 2008 study wherein the EFSA reviewed scientific studies for a claim that consuming a bacterial powder containing *bifidobacterium longum* and two other strains "improve[s] the general immunity by maintaining the microbiological balance" and concluded that the one unpublished *in vitro* study it was provided did not establish the claimed immune system improvement. (*Id.*, ¶ 39). The Amended Complaint also refers to a 2012 scientific opinion

14

published by the EFSA based on a review of purported proof for claims that consumption of the combination of the same three bacteria strains in Phillips Colon Health provides defenses against unhealthy bacteria in the general adult population.  There, the EFSA concluded that **no cause and effect relationship has been demonstrated for the consumption of the three bacteria in Phillips Colon Health and the maintenance of defenses against pathogenic bacteria.** (Am. Compl., ¶ 41) (emphasis added).  Such scientific studies, accepted as true for purposes of this motion, allow the Court to draw the reasonable inference that the combination of the three strains of bacteria contained in Phillips' Colon Health does not deliver the digestive health benefits that Bayer claims it does.   Whether or not Plaintiffs will ultimately be able to *prove* that Bayer's statements are actually false remains to be seen and is certainly not at issue on a motion to dismiss. *See generally Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (quoting *Twombly*, 550 U.S. at 570).  Defendant's motion to dismiss Plaintiffs' CLRA, UCL and/or ICF claims is therefore **denied**.

### B.     Common Law Claims

Defendant moves to dismiss Plaintiffs' common law claims of breach of the implied warranty of merchantability and unjust enrichment on two grounds: (1) for the same reasons that Plaintiffs' lack of substantiation theory is not cognizable under the relevant consumer fraud statutes, it is also not cognizable under common law theories of breach of implied warranty of merchantability and unjust enrichment; and (2) failure to state a claim.  Having already determined that Plaintiffs' consumer fraud claims are premised on more than a mere lack of substantiation theory—but rather, on scientific studies suggesting that the combination of the strains of bacteria

15

contained in Phillips' Colon Health do not deliver the health benefits that Bayer claims it does—the Court rejects the first argument in support of dismissal of Plaintiffs' common law claims.

### 1. Breach of Implied Warranty of Merchantability

Defendant moves to dismiss this claim on the basis that: (a) Illinois law applies to Plaintiffs' breach of implied warranty of merchantability claims, and (b) Illinois requires privity of contract to recover economic damages for breach of implied warranty of merchantability. Plaintiffs oppose this aspect of Defendant's motion on the basis that Defendant's choice of law analysis is flawed and, as such, Illinois law does not necessarily apply to each of the named Plaintiffs' implied warranty claims; and (b) in any event, Illinois law has carved out an exception to its privity requirement for consumable products.

The Court begins its analysis by noting that Defendant's choice of law analysis as to this claim is incomplete. As Plaintiffs correctly note, Defendant relies on § 148 of the Restatement in arguing that Illinois has the most significant relationship with Plaintiffs' claims. Although courts look to § 148 in assessing which state's law should apply to fraud claims, since breach of implied warranty claims sound in contract, courts instead look to § 188 of the Restatement to determine which state's law applies to such claims. *See Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 134 N.J. 96, 102 (1993). Defendant did not engage in a choice of law analysis pursuant to § 188 of the Restatement in its moving brief. The Court declines to consider the parties' related arguments—including whether Illinois law or California law (or *both*) should apply to Plaintiff Rikos's breach of implied warranty of merchantability claim(s)—in the abstract and thus declines to engage in a choice of law analysis as to this claim at this time. Because the parties agree, however, that Illinois law should apply to Plaintiff Yuncker's breach of implied warranty of

merchantability claim, the Court will, for purposes of judicial economy, assess whether the Amended Complaint states a facially plausible claim for breach of the implied warranty of merchantability under Illinois law.

"Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Voelker v. Porsche Cars North America, Inc*., 353 F.3d 516, 525 (7th Cir. 2003) (citing *Rothe v. Maloney Cadillac, Inc*., 119 Ill.2d 288, 116 Ill.Dec. 207, 518 N.E.2d 1028, 1029–30 (1988)); *Jensen v. Bayer AG,* 371 Ill. App. 3d 682, 690-691(Ill. App. 1 Dist. 2007) ("In order for a plaintiff to file a claim for economic damages under the Uniform Commercial Code (UCC)(810 ILCS 5/1–101 et seq. for the breach of an implied warranty, he or she must be in vertical privity of contract with the seller."). Thus, as a general matter, under Illinois law, Plaintiffs would only have a cause of action for breach of implied warranty of merchantability against the entity from which they purchased Phillips' Colon Health. The Amended Complaint acknowledges that each of the named Plaintiffs purchased Phillips' Colon Health directly from a pharmacy—not from Bayer. *See, e.g.,* Am. Compl., ¶¶ 11, 12. "Although a plaintiff may be excepted from the privity requirement [under Illinois law] by suing for personal injury,"[7] Plaintiffs have not brought an action for personal injury. *Jensen*, 371 Ill. App. 3d at 691. To the contrary,

---

[7] The Court has reviewed the sole case relied on by Plaintiffs in support of the position that Illinois courts have carved out an exception to the privity requirement for breach of implied warranty of merchantability claims involving food products and finds same to be distinguishable from the case at hand inasmuch as Plaintiffs in *this* case do not allege personal injury and instead sue Bayer for purely economic loss. *See Warren v. Coca-Cola Bottling Co. of Chicago*, 166 Ill. App. 3d 566, 568-569, 519 N.E.2d 1197 (Ill. App. 1st Dist. 1988) (involving claims of strict liability, negligence, and breach of implied warranties where "plaintiff became ill after drinking from a can of Coca-Cola purchased at Litt's Cut Rate, a drug store"). By comparison, the Court finds that the facts of this case more closely resemble the facts in *Jensen*, 371 Ill. App. 3d at 691, where the Appellate Court of Illinois affirmed the dismissal of a breach of implied warranty of merchantability claim brought by a consumer of a cholesterol drug where the consumer was suing the manufacturer—and not the pharmacy where he bought the product—for purely economic loss.

the Amended Complaint makes clear that Plaintiffs are suing for purely economic loss. *See* Am. Compl., ¶¶ 11 ("Plaintiff Yuncker is not claiming physical harm or seeking the recovery of personal injury damages"); ¶ 12. Thus, to the extent Plaintiffs have intended to assert claims of breach of the warranty of merchantability under Illinois law, they were required to allege facts establishing privity. Not only have Plaintiffs failed to do so, but it is clear that *cannot* do so given their concession that the products at issue were not purchased directly from Bayer. Thus, to the extent that Illinois law applies to Plaintiffs' breach of implied warranty of merchantability claim, such claim must be dismissed. *See, e.g., Jensen*, 371 Ill. App. 3d at 691 (affirming dismissal of breach of implied warranty claim brought by consumer of cholesterol drug where said consumer was suing manufacturer—and not the pharmacy where he bought the product—for purely economic loss).

### 2. Unjust Enrichment

Defendant moves to dismiss Plaintiffs' unjust enrichment claims on the following grounds: (1) Illinois law should apply to Plaintiffs' unjust enrichment claims, (2) under Illinois law, if an unjust enrichment claim is premised on the same underlying conduct that forms the basis of a claim sounding in contract, tort or statute, then the unjust enrichment claim will rise or fall with the related claim, and (3) because Plaintiffs cannot state a consumer fraud or breach of implied warranty claim, their claim of unjust enrichment under Illinois law fails for the same reasons.

The Court begins by noting that Defendant's choice-of-law analysis as to this claim is incomplete. As Plaintiff correctly points out, Defendant provides no legal argument in support of the notion that the court's consideration of the factors set forth in § 221 of the Restatement should weigh in favor of applying Illinois law to Plaintiffs' unjust enrichment claims. Instead, Defendant

relies on its argument vis-à-vis § 148(2) of the Restatement which, as stated above, governs claims sounding in fraud. Moreover, the parties' briefing on the issue of whether or not an actual conflict of law exists as to this claim is also inadequate. For example, although Defendant points to several alleged conflicts of law in their moving brief (Def. Br. at 15-16), Plaintiffs make a passing reference—in a footnote—that no actual conflict exists without directly addressing the alleged conflicts referred to in Defendant's brief. *See* Pl. Opp'n Br. at 23 n. 8. In light of the foregoing, the Court declines to engage in a choice-of-law analysis as to this claim at this time.

Even assuming, *arguendo*, that Illinois law should apply to this claim (as Defendant suggests), *and* that claims of unjust enrichment under Illinois law rise or fall with their related contract or tort claims,[8] Defendant's motion to dismiss this claim would in any event be denied inasmuch as the Court has determined that Plaintiffs have adequately alleged claims for violation of California and Illinois consumer protection statutes. Defendant's motion to dismiss this claim— on the basis that it rises or falls with the related consumer fraud claims[9]—is therefore denied.

---

[8] To be clear, the Court makes no such finding. *See generally Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (Ill. App. 1 Dist. 1998) ("Our supreme court has expressly held that to 'state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.' ") (citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill.2d 145, 160 (1989)).

[9] Defendant does not argue that Plaintiffs' unjust enrichment claim is otherwise deficient.

IV.  **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is **granted in part and denied in part**.  In particular, Defendant's motion to dismiss Count One is granted; Count One is dismissed with prejudice.  Defendant's motion to dismiss Counts Two, Three, Four, Five[10] and Six is denied.

An appropriate Order accompanies this Opinion.

s/ Jose L. Linares  
JOSE L. LINARES  
U.S. DISTRICT JUDGE

Date: November 6, 2014

---

[10] Although the Court held that the Amended Complaint fails to state a viable claim for breach of implied warranty of merchantability under Illinois law, the Court declined to rule on the issue of which state's law would apply to Plaintiffs' breach of implied warranty of merchantability claim at this time.  The parties are free to reassert their choice-of-law arguments in future motion practice.